Daniel S. Bretzius, Esq.
Dan B Law PLLC
75 South Main Street, #272
Concord, NH 03301
Dan@DanBLaw.com

Attorney for Plaintiff
Atrimax Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Atrimax Inc. | Case No. 4:25-cv-1310 |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| Vaughan John Hutchinson | (PLAINTIFF DEMANDS A JURY TRIAL FOR ALL CLAIMS SO TRIABLE) |
| Defendant. | |

Plaintiff, Atrimax Inc., by and through its undersigned attorney, as and for its Complaint against Defendant, Vaughan John Hutchinson, alleges as follows:

### PARTIES

1.      Plaintiff Atrimax Inc. is a corporation organized and existing under the laws of Canada, with a registered address of 19 Jessop Drive, Brampton, ON L7A 3M7, Canada.

2.      Plaintiff Atrimax Inc. does not have any parent corporation or publicly held corporation that owns 10% or more of its stock.

3.      Upon information and belief, Defendant Vaughan John Hutchinson is an individual residing at 175 Surrey Road, Rd 8, Tariki, 4388, Inglewood, New Zealand.

1

COMPLAINT

**JURISDICTION AND VENUE**

4.    This Court has subject matter jurisdiction pursuant to at least 28 U.S.C. §§ 1331 and 1338.

5.    This action seeks in part declaratory relief under United States patent law, 35 U.S.C. 101 *et seq.*, pursuant to 28 U.S.C. §§ 2201 and 2202.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2), (b)(3), and/or (c)(3).

7.    This Court has personal jurisdiction over Defendant at least pursuant to Snaprays, LLC v. Lightning Defense Group LLC, 100 F. 4th 1371 (Fed. Cir. 2024).

**BACKGROUND**

8.    Various types of vertical wood splitters have existed across the world for at least 100 years.

9.    As a first example, dating back to at least 1928, German Patent No. DE 507680 describes a wood splitting device, wherein "the piece of wood to be split is placed on the cutting edge of the knives a, b and driven through the container h with a suitable tool, such as a wooden hammer", such that "the tubular container prevents the separated chips from jumping away and protects the cutting edges against damage or careless touching."



COMPLAINT

10.    As a second example, dating back to at least 2003, Japan Patent Application No. JP2004305256 describes a wood splitter created by "fixing the lower part of the long blade (1) and the lower part of the inclined blade (2) to the base (3)", wherein the wood is split when "a hammer or a mallet is swung down without using an ax, so that a hammer or the like is placed on the flat end face of the log (W)".



COMPLAINT

11.     As a third example, dating back to at least 2004, U.S. Patent No. 7,096,901 described the history of such devices, and explained that "various methods of operation have become known, which essentially are based on the idea of inverting the position of the cutting blade of the axe. Thus no longer does the axe hit the piece of wood from above but instead the piece of wood is banged from above against the blade with the help of a heavy hammer or sledgehammer. This procedure certainly aims to provide greater safety for the woodcutter with regard to all dangers inherent in the all around swing of the sharp axe in the air." U.S. Patent No. 7,096,901 discloses a wood splitter with a "saddle member 5" "to hold the piece of wood 7 upright before the hammer 8 (FIG. 4) comes down onto the upper end of the piece of wood 7."



Fig 4

COMPLAINT

12.    As a fourth example, dating back to at least 2012, Swedish Patent SE538510 describes a wood splitter 8 having an upright support 6 attached to a bottom base 10, where "dividing member 4 is formed by a fixed or detachable attachment to the support 6", with firewood 1 supported by the upright support 6 and splitting surface 2 of the dividing member 4, such that "dividing means 4 is arranged to penetrate the firewood 1 in the direction from one side A of the firewood 1 to the opposite side B of the firewood 1, after being struck by a sledgehammer" 3.



Fig. 2



Fig. 4



COMPLAINT

**Kindling Cracker and Asserted Patent**

13.     Ayla Hutchinson purports to have invented a safer way to split kindling without a downward axe swing, "to make sure [her] mum kept all of her fingers and limbs intact" and to "stop fingers from being chopped off all around the world."

14.     For Ayla's first prototype, she welded an upward-facing axe head onto a base plate.

15.     Ayla's first prototype was a more primitive version of the device shown in Japan Patent Application No. JP2004305256.

16.     For Ayla's second prototype, she additionally welded to the base two rods with a circular piece attached between, substantially shown as follows:



17.     For Ayla's third prototype, she removed the cutting surface from the axe head, and attached it to the support rod, much like the device shown in Swedish Patent SE538510.



Fig. 4



6

COMPLAINT

18.    Upon information and belief, the third prototype was commercially offered for sale in late 2013 under the KINDLING CRACKER brand.

19.    On December 19, 2013, Denise Tyrer-Harding filed an international Patent Cooperation Treaty ("PCT") patent application on behalf of Vaughan John Hutchinson, bearing PCT Application Serial No. PCT/NZ2013/000239 ("PCT Application") and identifying Ayla Hutchinson as the sole inventor.

20.    On June 18, 2015, Eric Jensen filed a national phase entry of the PCT Application, bearing U.S. Application Serial No. 14/653,302 and identifying Ayla Hutchinson and Defendant Vaughan Hutchinson as joint inventors.

21.    On February 2, 2021, U.S. Application Serial No. 14/653,302 issued as U.S. Patent No. 10,906,202 ("Asserted Patent").

22.    As of the filing of this action, Defendant Vaughan John Hutchinson purports to be the current sole owner of the Asserted Patent.

23.    Upon information and belief, as of the filing of this action, Defendant Vaughan John Hutchinson sells wood splitter products on Amazon.com, under the KINDLING CRACKER brand.

**Amazon.com IP Policies**

24.    In order to sell products on Amazon.com, sellers are required to agree and submit to various policies, including Amazon's "Intellectual Property Policy for Sellers." ("Amazon IP Policy"). https://sellercentral.amazon.com/help/hub/reference/external/201361070.

25.    The Amazon IP Policy states that sellers "may not violate the IP rights of brands or other rights owners" and indicates that "[v]iolating this policy may result in loss of selling privileges or other legal consequences."

26.    The Amazon IP Policy provides in relevant part as follows: "If you receive a notice or warning for infringement and you believe the rights owner or Amazon made an error, you may appeal or dispute the claim."

27.    The Amazon IP Policy provides that a seller can appeal a notice of patent infringement by providing "a court order demonstrating that your product is non-infringing or that the asserted patent is invalid or unenforceable."

COMPLAINT

**Accused Products**

28.     Beginning in summer of 2023, Plaintiff Atrimax Inc. sold wood splitters on Amazon.com under the ATRIUM HOME brand, bearing ASINs B0CZYK5YMP, B0CZYRGZ7C, and B0CZZ1SK31, exemplarily shown as follows:



(collectively "Accused Products").

29.     Historically, Plaintiff had the most sales of Accused Products in the State of Texas.

30.     Plaintiff stored its Accused Products in this District.

31.     On or about October 28, 2024, Defendant intentionally submitted Complaint ID 16546514881 with Amazon.com and against Plaintiff's Accused Products, alleging that the Accused Products infringe upon the Asserted Patent.

32.     When Defendant submitted Complaint ID 16546514881, he requested and intended that the product listings for Plaintiff's Accused Products be removed from Amazon.com.

33.     When Defendant submitted Complaint ID 16546514881, he knew and intended that, if the product listings for Plaintiff's Accused Products were removed from Amazon.com, they would remain so removed unless Plaintiff initiated legal action to vindicate its right and privilege to sell the Accused Products.

34.     When Defendant submitted Complaint ID 16546514881, he intended that Plaintiff lose sales and inventory of Accused Products within this district.

COMPLAINT

35. When Defendant submitted Complaint ID 16546514881, he knew and intended that the inventory of Plaintiff's Accused Products for a removed listing would be destroyed by Amazon.com.

36. As a result of Defendant's complaint to Amazon, and pursuant to the Amazon IP Policy, Amazon deactivated the product pages for Plaintiff's Accused Products, assigned a negative account health to Plaintiff, and destroyed Plaintiff's inventory of Accused Products stored in a warehouse in this district.

37. Defendant intended that his submission of Complaint ID 16546514881 would affect Plaintiff's reputation, inventory, sales, marketing, and other activities in the State of Texas and within this District, including sales on Amazon.com to consumers in this District.

38. Defendant has refused to cease his extra-judicial enforcement activities, has refused to withdraw the Amazon Complaint, and has refused to otherwise resolve the controversy that he has created, necessitating the filing of this action.

39. Plaintiff has been forced to initiate this action and is entitled to (1) a declaration that the Accused Patent is invalid and not infringed; (2) damages to remedy the destruction of Plaintiff's inventory of Accused Products and lost profits; (3) a declaration to legally restore Plaintiff's privileges to sell the Accused Products; and (4) attorney fees required for the commencement and maintenance of this action.

**COUNT I**
**DECLARATORY JUDGMENT**
**INVALIDITY OF ASSERTED PATENT**

40. Plaintiff incorporates by reference in their entirety each of the allegations set forth in paragraphs 1-39 of this Complaint.

41. The Asserted Patent is invalid as anticipated under 35 U.S.C. § 102 and/or rendered obvious under 35 U.S.C. § 103 by prior art, including but not limited to that described or identified herein.

42. As one example, Claim 1 of the Asserted Patent is invalid as anticipated and/or rendered obvious by German Patent No. DE 507680 as shown on the following pages:

COMPLAINT

| Asserted Patent (U.S. Patent No. 10,906,202) | Prior Art (DE507680 (Issued September 19, 1930)) |
|---|---|
| 1. A splitting apparatus for splitting materials, said splitting apparatus comprising: | "The subject of the invention is a small wood splitter with several blades arranged in a cross shape" p. 1, lines 1-3. |
| a vertically aligned free standing body, the body including: | "the blades are stored in a tubular container [h]" p. 1, lines 4-5.<br><br>"Of course, the container h could also be fitted with sufficiently long feet or stored in a suitable frame." P. 1, line 67 to p. 2, line 2.<br><br> |
| at least one vertically oriented elongate supporting device having a top end,<br><br>the top end having a top surface perpendicular to the vertical axis of the body, | "the container h has a bearing plate m" p. 1, lines 57-59<br><br> |

COMPLAINT

| Asserted Patent<br>(U.S. Patent No. 10,906,202) | Prior Art<br>(DE507680 (Issued September 19, 1930)) |
|---|---|
| a safety device having a substantially enclosed outer peripheral edge that is a protective barrier, the safety device being directly attached to the top surface of the top end of the vertically oriented elongate supporting device and being rigidly supported in a plane substantially perpendicular to the top end of the vertically oriented elongate supporting device and substantially parallel to a horizontal surface, | "the tubular container [h] prevents the separated chips from jumping away and protects the blades against damage or careless contact." p. 1, lines 9-12.<br><br> |

COMPLAINT

the safety device defining a top of a central area of the body, the central area of the body defined by the safety device in conjunction with the elongate supporting device,

the safety device including a substantially central aperture of the safety device that is an opening of a size configured to accommodate material inserted therethrough and into the central area of the body,

"When using the device, the piece of wood to be split is placed on the cutting edges e of the knives a, b and driven through the container h with a suitable tool, such as a wooden hammer." p. 2, lines 3-6.



Abb. 1



Abb. 2

12

| Asserted Patent (U.S. Patent No. 10,906,202) | Prior Art (DE507680 (Issued September 19, 1930)) |
|---|---|
| a stationary cutting device located within the central area of the body and distanced below the safety device, <br><br> the stationary cutting device including a cutting edge upwardly facing towards the safety device, such that a bottom end of the material inserted through the central aperture of the safety device is configured to rest on the upwardly facing cutting edge of the cutting device and a top end of the material is exposed at or above the safety device in a position to receive a downward non-cutting blunt force, <br><br> such that the stationary cutting device effects an upward cutting force sufficient to split the material from the bottom up, and | "The wood splitting device consists, for example, of two individual cross-shaped knives a and b." p. 1, lines 27-29. <br><br> "When using the device, the piece of wood to be split is placed on the cutting edges e of the knives a, b and driven through the container h with a suitable tool, such as a wooden hammer." p. 2, lines 3-6. <br><br>  |
| at least one side opening defined between the safety device, the elongate supporting device, and the horizontal surface to allow one or more portions of the split materials to fall from the central area of the body through the at least one side opening, | "Since the chips are prevented from jumping or flying away, they collect below the container h and can be easily transported to their intended destination from there." p. 2, lines 9-13. <br><br> "Of course, the container h could also be fitted with sufficiently long feet or stored in a suitable frame." P. 1, line 67 to p. 2, line 2. |

COMPLAINT

| Asserted Patent (U.S. Patent No. 10,906,202) | Prior Art (DE507680 (Issued September 19, 1930)) |
|---|---|
| wherein the material is contained within the central aperture of the safety device throughout the splitting process, | "When using the device, the piece of wood to be split is placed on the cutting edges e of the knives a, b and driven through the container h with a suitable tool, such as a wooden hammer." p. 2, lines 3-6. |
| the outer edge protective barrier being configured to limit either or both a user's hand and a separate pressure device from contacting the upward facing cutting edge distanced below the safety device, | "the tubular container [h] prevents the separated chips from jumping away and protects the blades against damage or careless contact." p. 1, lines 9-12. |
| and the upward facing cutting edge is distanced above the surface over which the splitting apparatus is used. | "Since the chips are prevented from jumping or flying away, they collect below the container h and can be easily transported to their intended destination from there." p. 2, lines 9-13.

"Of course, the container h could also be fitted with sufficiently long feet or stored in a suitable frame." P. 1, line 67 to p. 2, line 2.



*Abb. 1* |

14

43.     The Asserted Patent is indefinite, non-enabling, and invalid under 35 U.S.C. § 112, at least due to the repeated use of the term "substantially" throughout the claims. See "substantially enclosed", "substantially perpendicular", "substantially parallel", and "substantially central".

44.     The term "substantially" means "largely but not wholly". See, e.g., Aventis Pharm. Inc. v. Amino Chem. Ltd., 715 F.3d 1363, 1375-77 (Fed. Cir. 2013) (defining "substantially" pure as meaning "largely but not wholly"); Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1366-67 (Fed. Cir. 2001) (noting that "substantially" means "largely but not wholly that which is specified").

45.     The term "substantially" therefore precludes one extreme ("wholly") but does not properly provide a definite amount wherein "largely" is satisfied for the various claim terms, rendering the scope of the claims undefined and therefore invalid under 35 U.S.C. § 112.

46.     Based on at least the above, Plaintiff is entitled to a declaratory judgment that U.S. Patent No. 10,906,202 is invalid under at least 35 U.S.C. §§ 102, 103, and 112.

47.     Pursuant to at least 28 U.S.C. § 2202 and the circumstances of this case, Plaintiff is entitled to an injunction against Defendant, enjoining Defendant from filing complaints with Amazon.com to (1) allege that Plaintiff's Accused Products infringe upon the Asserted Patent; (2) request takedown of related product pages; and/or (3) seek destruction of inventory of Plaintiff's Accused Products.

48.     Pursuant to at least 28 U.S.C. § 2202 and the circumstances of this case, Plaintiff is entitled to damages (e.g. for lost profits and destroyed inventory) resulting from all false, wrongful, and/or unlawful enforcement activities, including but not limited to assertions of infringement of the clearly invalid Asserted Patent.

49.     Given the exceptional circumstances, Plaintiff should be awarded attorney fees under 35 U.S.C. § 285.

COMPLAINT

**COUNT II**
**DECLARATORY JUDGMENT**
**NON-INFRINGEMENT OF U.S. DESIGN PATENT NO. D989,355**

50.    Plaintiff incorporates by reference in their entirety each of the allegations set forth in paragraphs 1-49 of this Complaint.

51.    The Accused Products cannot infringe upon the Asserted Patent. See Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 644 (2015) ("[I]f . . . an act that would have been an infringement … pertains to a patent that is shown to be invalid, there is no patent to be infringed.").

52.    Even if the Asserted Patent was somehow valid, the Plaintiff's Accused Products cannot infringe upon it.

53.    All of the issued claims of the Asserted Patent require, *inter alia*, an allegedly novel and non-obvious "safety device having a substantially enclosed outer peripheral edge that is a protective barrier".

54.    During prosecution of the Asserted Patent, at least ten different claim sets were suggested to the USPTO.

55.    At least five of the claim sets presented during the prosecution of the Asserted Patent claimed an "enclosed" safety device.

56.    None of the claim sets including an "enclosed" safety device were found patentable.

57.    The USPTO only allowed the issued claim set after ordering inclusion of a safety device "having a substantially enclosed outer peripheral edge that is a protective barrier".

58.    Through its enforcement efforts regarding the Asserted Patent, Defendant has construed a "substantially enclosed" "safety device" to merely mean a solid ring.

59.    Defendant's claim construction is clearly incorrect for several reasons, including but not limited to those that follow.

60.    First, while the term "substantially" renders the claim ambiguous and of indefinite scope under 35 U.S.C. § 112, as explained above, it is unequivocal that the claim term of "substantially" enclosed does not include "wholly" enclosed. See, e.g., Aventis Pharm. Inc. v. Amino Chem. Ltd., 715 F.3d 1363, 1375-77 (Fed. Cir. 2013) (defining "substantially" pure as meaning "largely but not

16

wholly"); <u>Ecolab, Inc. v. Envirochem, Inc.</u>, 264 F.3d 1358, 1366-67 (Fed. Cir. 2001) (noting that "substantially" means "largely but not wholly that which is specified").

61.    Here, Plaintiff's Accused Products include a completely solid ring that cannot satisfy the requirements of the claimed "substantially enclosed" "safety device".

62.    As further support of this understanding, the scope of an issued claim is presumptively valid and different from the prior art cited by the United States Patent and Trademark Office ("USPTO") during prosecution. <u>See</u> 35 U.S.C. § 282(a); <u>Hewlett-Packard Co. v. Bausch & Lomb Inc.</u>, 909 F.2d 1464, 1467 (Fed. Cir. 1990).

63.    During prosecution of the Asserted Patent, the USPTO cited U.S. Design Patent No. D817,123 as prior art.

64.    U.S. Design Patent No. D817,123 is identified as prior art on the second page of the Asserted Patent.

65.    A true and correct copy of Figure 1 of U.S. Design Patent No. D817,123 is reproduced as follows:



FIG. 1

66.    The Asserted Patent issued as novel and non-obvious over U.S. Design Patent No. D817,123.

COMPLAINT

67.    As shown in the following side-by-side comparison, the Accused Products do not materially differ from U.S. Design Patent No. D817,12, as both products include a completely solid ring.




FIG. 1

68.    Thus, the "substantially enclosed" "safety device" cannot be a completely solid ring.

69.    Instead, the claim language of "safety device having a substantially enclosed outer peripheral edge that is a protective barrier" was required by the USPTO to capture the embodiment shown in FIG. 3 of the Asserted Patent.

COMPLAINT

70.    Figure 3 of the Asserted Patent illustrates a safety container barrier 13 with an access cutout on the front face (annotated in red).



71.    The access cutout was further described in the issued claims as "one side opening defined between the safety device, the elongate supporting device, and the horizontal surface to allow one or more portions of the split materials to fall from the central area of the body".

72.    Plaintiff's Accused Products have no such claimed protective barrier and no such cutout opening.

73.    Additionally, all claims of the Asserted Patent also require a "pressure device", which the specification describes as "a mallet, hammer, stone/rock, or wood, to tap on top of the material (to be split) in a downwards action while ensuring the material is resting on the sharp edge of the cutting means".

74.    Plaintiff's Accused Products do not include any "pressure device".

75.    For at least these reasons, Plaintiff's Accused Products do not infringe the Asserted Patent.

76.    Based on at least the above, Plaintiff is entitled to a declaratory judgment that Plaintiff's Accused Products do not infringe any claim of U.S. Patent No. 10,906,202.

COMPLAINT

77.      Pursuant to at least 28 U.S.C. § 2202 and the circumstances of this case, Plaintiff is entitled to an injunction against Defendant, enjoining Defendant from filing complaints with Amazon.com to (1) allege that Plaintiff's Accused Products infringe upon the Asserted Patent; (2) request takedown of related product pages; and/or (3) seek destruction of inventory of Plaintiff's Accused Products.

78.      Pursuant to at least 28 U.S.C. § 2202 and the circumstances of this case, Plaintiff is entitled to damages (e.g. lost profits and destroyed inventory) resulting from all false, wrongful, and/or unlawful enforcement activities, including but not limited to assertions of infringement of the Asserted Patent filed with Amazon.com.

79.      Given the exceptional circumstances, Plaintiff should be awarded attorney fees under 35 U.S.C. § 285.

**DEMAND FOR RELIEF SOUGHT**

WHEREFORE, PLAINTIFF respectfully requests the following relief:

A.   That the Court declare that U.S. Patent No. 10,906,202 is invalid;

B.   That the Court declare that Plaintiff has not infringed U.S. Patent No. 10,906,202;

C.   That the Court find that this case is "exceptional" within the meaning of at least 35 U.S.C. § 285, and award Plaintiff reasonable attorney's fees, costs, and expenses;

D.   That the Court enjoin Defendant from filing complaints against Plaintiff with Amazon.com;

E.   That the Court award damages to Plaintiff, in an amount to be determined at trial, to the fullest extent permitted by applicable law; and

F.   That the Court award to the Plaintiff such further relief, in law or in equity, as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues properly so triable.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED: March 20, 2025

By: /s/ Daniel S. Bretzius
Daniel S. Bretzius, Esq.
Dan B Law PLLC
75 South Main Street, #272
Concord, NH 03301
Dan@DanBLaw.com

Attorney for Plaintiff
Atrimax Inc.

COMPLAINT